1  AARON M. CLEFTON, Esq.  (SBN 318680)
2  REIN & CLEFTON, Attorneys at Law
   1423 Broadway #1133
   Oakland, CA  94612
3  Telephone:  510/832-5001
   Facsimile:   510/832-4787
4  info@reincleftonlaw.com

5  Attorneys for Plaintiff
   PAUL SPECTOR
6

7              UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10  PAUL SPECTOR | CASE NO.<br>Civil Rights |
| 11       Plaintiff, | **COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:** |
| 12 | |
| 13       v. | **1.  Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 _et seq._)** |
| 14 | |
| 15  KJS HOSPITALITY LLC dba<br>SURESTAY PLUS HOTEL | **2.  Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)** |
| 16 | **3.  Violation of the California Disabled Persons Act (Cal. Civil Code § 54 _et seq._)** |
| 17       Defendant. | |
| 18 | DEMAND FOR JURY TRIAL |

19

20       Plaintiff PAUL SPECTOR complains of Defendant KJS HOSPITALITY LLC dba

21  SURESTAY PLUS HOTEL, and allege as follows:

22       1.       **INTRODUCTION:**  When disabled Plaintiff attempted to reserve a room at

23  Defendant's hotel, he was told that he would have to pay a $200 deposit, twice the standard

24  deposit of $100, for his service dog to stay with him at the Surestay Plus Hotel. When Plaintiff

25  informed Defendant's employee that his dog is a service dog, she reiterated that all dog owners

26  (including service dogs) must pay the deposit in case the dog has an accident in the room or

27  causes other damage.  Defendant already charged everyone a $100 deposit to reserve the room, so

28  Plaintiff was distressed about paying a $200 deposit which Defendant could keep after his stay.

Despite Plaintiff's protestations that the deposit was contrary to the ADA, Defenant refused to waive the deposit for Plaintiff Spector's service dog.

2.      When Plaintiff is working, he often stays at hotels near to work location so that he can maximize rest between shifts. On February 2, 2024, Plaintiff was working as a private duty nurse for a patient at St. Rose's hospital.  During a break at work, Plaintiff went to find a nearby hotel to stay in. Plaintiff found the Surestay Plus Hotel located at 2460 Whipple Road, Hayward California, through a google search.  Plaintiff and his service dog Koko drove to the hotel to check on its service animal policy and availability for the night.

3.      The Defendant's decision to charge extra deposits for service dogs contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals. In addition, if a business requires a deposit or fee to be paid by patrons with pets, it must waive the charge for service animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.  Similarly, the DOJ's FAQs regarding Services Animals mirror these requirements specifically in the hotel context:

**Q12. Can hotels charge a cleaning fee for guests who have service animals**?

A. No. Hotels are not permitted to charge guests for cleaning the hair or dander shed by a service animal. However, if a guest's service animal causes damages to

2

1    a guest room, a hotel is permitted to charge the same fee for damages as charged to

2    other guests.

3    https://www.ada.gov/resources/service-animals-faqs/

4        4.    Plaintiff often has the need or desire to stay in hotels that are nearby his home and

5    work. His partner used to work in the hospitality industry and both she and Plaintiff are of

6    retirement age so enjoy local travel and staying in different hotels.  The SureStay Plus Hotel in

7    Hayward is very conveniently located for Plaintiff.  Plaintiff intends to return to the hotel in the

8    future but cannot do so until the policies of the hotel are made accessible to disabled individuals

9    who use service dogs, including revision of its service dog policies and necessary employee

10    training and/or re-training.  Plaintiff has brought this lawsuit to force Defendant to change its

11    discriminatory and illegal policies and compensate him for not allowing him to stay at the hotel

12    because Plaintiff Spector is a disabled person who needs the assistance of his qualified service

13    dog.  Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff,

14    when accompanied by a qualified service dog at the SureStay Plus Hotel.

15        5.    Plaintiff is an advocate for himself and other persons with disabilities who use

16    service dogs. When encountering illegal policies such as those created and maintained by

17    Defendant, Plaintiff takes legal action to ensure what happened to him does not happen to others.

18    His goal is enforcing the ADA and to contest illegal policies and practices that burden service dog

19    users. This is especially important and in the public interest where onerous and illegally

20    discouraging requirements such as requiring "deposits" for service dogs are easily repeated but

21    may evade review because not all disabled persons may assert their rights to stop such policies

22    and practices. Without a legal challenge, however, the practices are likely to continue because

23    they benefit the public accommodations that do not follow the law. For example, here,

24    discouraging service dogs benefits the hotel by reducing the costs of cleaning and housekeeping

25    from any incidental shedding that may occur.

26        6.    **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC

27    sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law

28    pursuant to 28 U.S.C. § 1367.

7. **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

8. **INTRADISTRICT:** This case should be assigned to the Oakland intradistrict because the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

9. **PARTIES:** Plaintiff Paul Spector is a professional nurse and "qualified" disabled person and veteran who uses the assistance of a service dog for mobility. He is also a strong proponent of the ADA and enforcing the laws regarding service dog access because he has frequently been denied access to public places because of his service dog. Plaintiff was injured in a very serious car accident in 2012 which left him with residual pain and weakness in his left knee and arthritis, all of which cause him difficulty in walking, balancing, and standing for long periods of time. Plaintiff's arthritis in his left knee is so severe that he is eligible for a total knee replacement.

10. Plaintiff has been issued a parking placard for disabled persons from the State of California to park any vehicle which he drives or is transported in, in a designated and properly configured disabled accessible parking space. While he can walk independently on good days, Plaintiff often walks with an unsteady gait, and his knee can give out while he is walking which could cause him to fall down.

11. Plaintiff relies upon his service dog, a Belgium Shephard named "Kokobat," also called "Koko" for short, to assist him with certain tasks. Thes include pulling him upstairs and hills while they are walking that reduce his chances of falling. He also assists Plaintiff with stabilizing his balance. Koko has been trained to walk on Plaintiff's left side, and when Claimant's knee begins to weaken, Koko leans his considerable weight against Plaintiff and allows him to lean against Koko which provides Plaintiff with necessary stability and support to take some pressure off of his weak left knee. Additionally, Koko is trained to assist Plaintiff in getting down to the floor and back up when he needs to retrieve dropped objects. All of these tasks Plaintiff has trained Koko to do with commands. They are not behaviors that Koko has ever

4

engaged in naturally or without his training.  Koko was also professionally trained to be a service dog.  Additionally, Plaintiff continues to reinforce the training with Koko daily.  Plaintiff is a qualified person with a disability as defined under federal and state law who is substantially limited in the major life activities of walking, balancing, bending and standing.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

12.     Defendant KJS HOSPITALITY LLC dba SURESTAY PLUS HOTEL, are and were at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business located at 2460 Whipple Road, Hayward, California, known as the SureStay Plus Hotel.

13.      SureStay Plus Hotel is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of the categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

14.     **FACTUAL STATEMENT:**  Plaintiff Paul Spector has been working with his service dog Koko for almost two years.  Koko is a Belgium Shephard who was both professionally trained and individually trained to be a service dog.  Plaintiff has also trained and continues to train Koko to serve his specific needs throughout their relationship through a series of commands and gestures.  Koko is specifically trained to assist Plaintiff with mobility to reduce the chances he will fall, including stabilizing him if his knee gives out, assisting him up hills and stairs, and assisting him in bending down to retrieve objects at floor level.

15.     Koko is trained to do several tasks he would not otherwise know but for his training.  When Plaintiff first acquired Koko, Koko was unable to understand the "left heal," "right heal," "sit," "stand," "stay," or "watch," and "bring," and "hodge[1]" commands. Now Koko does. As is typical of young dogs, at first Koko could not pay attention, would roam on his leash in various directions, and would not pull Plaintiff up the stairs without training.  Plaintiff, along with professional trainers, used a variety of reward systems, such as treats, touch and voice praise, to teach Koko commands by association.  For example, Plaintiff would reward Koko when he

---

[1] This the word Plaintiff uses to command Koko to pull, for example when he needs to traverse stairs.

would sit while saying the command and reward him with a treat and praise.  This is a building block for further training such as "stand" and "stay" in much the same fashion, using reward and association with the behaviors described by the command that Koko would not do but for this training.  Similarly, when Koko would stay on a Plaintiff's left side and push against Plaintiff's knee, Plaintiff would reward Koko and say "left-heal."  The same process was used for right-heal. Plaintiff taught the "watch" command to mean "pay attention to my next command" using this reward and association practice. If Plaintiff can identify an object for Koko, Plaintiff can use the "bring" command for Koko to retrieve it off the floor or from somewhere nearby.

16.    By mastering these basic commands, Koko already helps Plaintiff balance as a left brace against his knee giving way through the "left-heal" command.  Plaintiff then taught additional tasks to help with his disability.  For example, it is difficult for Plaintiff to get off the ground if he falls.  Plaintiff can command Koko, "watch," "stand" then "stay," so that Plaintiff could use his right knee to begin rising while placing his hand on Koko's should blades for balance as he got up.  Finally, to train the "hodge" command, Plaintiff would go to a staircase with Koko.  His partner would be at the top of the stairs with a treat.  Plaintiff would instruct Koko to "left-heal," then say "hodge" to release Koko and allow him to get the treat, rewarding the behavior with the associated command.  This became a command that specifically assists Plaintiff go upstairs, assisting him with his disability and difficulty traversing stairs.  It was not something he would do but for the training.

17.    Koko is a working dog; he is not a pet.  Plaintiff Spector and Koko have trained extensively together, and they supplement that training daily.  Plaintiff takes Koko everywhere with him in public.  It is important they stay together as much as possible because (a) Koko provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  With few exceptions, where Plaintiff Spector goes, Koko goes.

18.    On February 2, 2024, Plaintiff was working as a private duty nurse for a patient at St. Rose's hospital.  During a break at work, Plaintiff went to find a nearby hotel to stay in between his shifts. Plaintiff found the Surestay Plus Hotel located at 2460 Whipple Road,

Hayward California, through a google search.  Plaintiff and his service dog Koko drove to the

hotel to check on its service animal policy and availability for the night.

19.     Plaintiff and Koko entered the lobby of the SureStay Plus Hotel.  Plaintiff asked

Defendant's employee at the reception desk about availability and rates for the night of February

2, 2024. Defendant's employee responded that they did have availability for check in after 3 pm,

and she informed Plaintiff of the nightly rate and the need for a $100 deposit.  Plaintiff then

informed Defendant's employee that he had a service dog, and he asked if that is okay with

Defendant.  Defendant's employee said that Plaintiff would have to pay an extra $100 deposit for

his dog. Plaintiff reiterated that his dog is a service dog that he needs due to his disability.

Defendant's employee said that the extra $100 deposit is required by Defendant because

sometimes pets have accidents in the rooms or cause other damage that needs to be paid for.

20.     Plaintiff said that he understood the concern and that of course he would have to

pay for any damage to the room caused by himself or his service dog but that an extra $100

deposit was too much for his well-trained service dog. Plaintiff asked whether he as a service dog

owner he would have to pay a $200 deposit in order to stay at the SureStay Plus Hotel.

Defendant's employee confirmed that Plaintiff would have to pay a $200 deposit if he wanted to

stay at the SureStay Plus Hotel with his service dog.  Defendant's employee then recommended

that Plaintiff try the Motel 6 down the road.  It was clear to Plaintiff that Defendant was not going

to allow Plaintiff to stay at the SureStay Plus Hotel without forcing him to pay an exorbitant

deposit, twice what others pay, so he left.

21.     Plaintiff wishes to return to the SureStay Plus Hotel when he has the need or want

for hotel accommodation near his home, but only *after* Defendant has implemented proper service

animal policies and training of its staff.  Plaintiff is deterred from returning to the hotel until these

policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq.*)**

22.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein,

the factual allegations contained in Paragraphs 1 through 21, above, and incorporates them herein

7

1    by reference as if separately repled hereafter.

2        23.    In 1990 Congress passed the Americans with Disabilities Act after finding that

3    laws were needed to more fully protect "some 43 million Americans with one or more physical or

4    mental disabilities; that historically society has tended to isolate and segregate individuals with

5    disabilities;" that "such forms of discrimination against individuals with disabilities continue to

6    be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals

7    with disabilities are to assure equality of opportunity, full participation, independent living and

8    economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and

9    unnecessary discrimination and prejudice denies people with disabilities the opportunity to

10   compete on an equal basis and to pursue those opportunities for which our free society is

11   justifiably famous."  42 U.S.C. § 12101(a).

12       24.    The ADA provides, "No individual shall be discriminated against on the basis of

13   disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

14   or accommodations of any place of public accommodation by any person who owns, leases, or

15   leases to, or operates a place of public accommodation." 42 USC § 12182.

16       25.    Plaintiff Spector is a qualified individual with a disability as defined in the

17   Rehabilitation Act and in the Americans with Disabilities Act of 1990.

18       26.     SureStay Plus Hotel is a public accommodation within the meaning of Title III of

19   the ADA.  42 U.S.C. § 12181(7)(A).

20       27.    The ADA prohibits, among other types of discrimination, "failure to make

21   reasonable modifications in policies, practices or procedures when such modifications are

22   necessary to afford such goods, services, facilities, privileges, advantages or accommodations to

23   individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

24       28.    Under the "2010 Revised ADA Requirements: Service Animals," as published by

25   the United States Department of Justice, and distributed by the DOJ's Civil Rights Division,

26   Disability Rights Section, "Generally, title II and title III entities must permit service animals to

27   accompany people with disabilities in all areas where members of the public are allowed to go."

28   ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

**Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

29.     Defendant has a policy and practice of forcing guests with service animals to pay an extra $100 deposit at the SureStay Plus Hotel. This is contrary to the ADA.  The Department of Justice issued guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals. In addition, if a business requires a deposit or fee to be paid by patrons with pets, it must waive the charge for service animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/.  Similarly, the DOJ's FAQs regarding Services Animals mirror these requirements specifically in the hotel context:

**Q12. Can hotels charge a cleaning fee for guests who have service animals**?

A. No. Hotels are not permitted to charge guests for cleaning the hair or dander shed by a service animal. However, if a guest's service animal causes damages to a guest room, a hotel is permitted to charge the same fee for damages as charged to other guests.

https://www.ada.gov/resources/service-animals-faqs/

30.     On information and belief, as of the date of Plaintiff's most recent visit to SureStay Plus Hotel on or about February 2, 2024, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of Plaintiff's disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

31.     In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

32.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes any "hotel, motel or other place of lodging."  42 USC § 12181(7)(A).

33.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or

10

class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

34.    The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the event that removal of any barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

35.    On information and belief, as of the dates of Plaintiff's encounter at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which

1  discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff

2  the full and equal enjoyment of the goods, services, facilities, privileges, advantages and

3  accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

4       36.    Defendant's actions continue to deny Plaintiff's rights to full and equal access by

5  deterring Plaintiff from patronizing the SureStay Plus Hotel and discriminated and continue to

6  discriminate against Plaintiff on the basis of his status as a disabled person who uses a service

7  dog, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods,

8  services, facilities, privileges, advantages and accommodations, in violation of section 12182 of

9  the ADA.  42 U.S.C. § 12182.

10      37.    Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,*

11 Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights

12 Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff Spector is being subjected to discrimination on the

13 basis of his disabilities in violation of sections 12182 and 12183.  On information and belief,

14 Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled

15 persons to "full and equal" access to this public accommodation since on or before Plaintiff's

16 encounters.  Pursuant to section 12188(a)(2)

17
18      [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief
        shall include an order to alter facilities to make such facilities readily accessible to
        and usable by individuals with disabilities to the extent required by this title.  Where
19      appropriate, injunctive relief shall also include requiring the provision of an
        auxiliary aid or service, modification of a policy, or provision of alternative
20      methods, to the extent required by this title.

21      38.    Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil

22 Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to

23 implement the Americans with Disabilities Act of 1990.  Plaintiff Spector is a qualified disabled

24 person for purposes of § 12188(a) of the ADA who is being subjected to discrimination on the

25 basis of disability in violation of Title III and who has reasonable grounds for believing he will be

26 subjected to such discrimination each time that he may use the property and premises, or attempt

27 to patronize the SureStay Plus Hotel, in light of Defendant's policies barriers.

28      WHEREFORE, Plaintiff prays for relief as hereinafter stated.

1

2

3

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL**
**CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES**
**ACT AS INCORPORATED**
**BY CIVIL CODE SECTION 51(f)**

4    39.    Plaintiff repleads and incorporates by reference, as if fully set forth again herein,

5    the allegations contained in Paragraphs 1 through 38 of this Complaint and incorporates them

6    herein as if separately re-pleaded.

7    40.    At all times relevant to this action, the Unruh Civil Rights Act, California Civil

8    Code § 51(b), provided that:

9    All persons within the jurisdiction of this state are free and equal, and no matter
      what their sex, race, color, religion, ancestry, national origin, disability, or medical
10    condition are entitled to the full and equal accommodations, advantages, facilities,
      privileges, or services in all business establishments of every kind whatsoever.

11

12    41.    California Civil Code section 52 provides that the discrimination by Defendant

13    against Plaintiff on the basis of disability constitutes a violation of the general anti-discrimination

14    provisions of sections 51 and 52.

15    42.    Each of Defendant's discriminatory acts or omissions constitutes a separate and

16    distinct violation of California Civil Code section 52, which provides that:

17    Whoever denies, aids or incites a denial, or makes any discrimination or distinction
      contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the
18    actual damages, and any amount that may be determined by a jury, or a court sitting
      without a jury, up to a maximum of three times the amount of actual damage but in
19    no case less than four thousand dollars ($4,000), and any attorney's fees that may
      be determined by the court in addition thereto, suffered by any person denied the
20    rights provided in Section 51, 51.5, or 51.6.

21    43.    Any violation of the Americans with Disabilities Act of 1990 constitutes a

22    violation of California Civil Code section 51(f), thus independently justifying an award of

23    damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per

24    Civil Code section 51(f), "A violation of the right of any individual under the Americans with

25    Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

26    44.    The actions and omissions of Defendant as herein alleged constitute a denial of

27    access to and use of the described public facilities by disabled persons who use service dogs

28    within the meaning of California Civil Code sections 51 and 52.  As a proximate result of

13

1    Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of

2    Civil Code sections 51 and 52, and are responsible for statutory and compensatory to Plaintiff,

3    according to proof.

4        45.    **FEES AND COSTS:**  As a result of Defendants' acts, omissions and conduct,

5    Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by

6    statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for

7    disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore

8    seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the

9    provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is

10   intended to require that Defendant make its facilities and policies accessible to all disabled

11   members of the public, justifying "public interest" attorney fees, litigation expenses and costs

12   pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other

13   applicable law.

14       46.    Plaintiff suffered damages as above-described as a result of Defendant's

15   violations.

16       WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**THIRD CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES  IN A**
**PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

20       47.    Plaintiff repleads and incorporates by reference, as if fully set forth hereafter, the

21   factual allegations contained in Paragraphs 1 through 46 of this Complaint and all paragraphs of

22   the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

23       48.    Under the California Disabled Persons Act (CDPA), people with disabilities are

24   entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public

25   places."  Civil Code § 54(a).

26       49.    Civil Code section 54.1(a)(1) further guarantees the right of "full and equal

27   access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging

28   places of accommodation, amusement or resort, or other places to which the general public is

invited." Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

50.     Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

51.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

52.     Defendant is also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

53.     SureStay Plus Hotel is a public accommodation within the meaning of the CDPA. On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

54.     Defendant made the decision to knowingly and willfully exclude Plaintiff and his service dog from its public accommodation by charging them an extra fee and thereby deny Plaintiff Spector's right of entrance into their place of business with his service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being essentially barred from entering this public accommodation and place of business based upon Defendant's illegal

deposits for Plaintiff Spector's legally protected use of his service dog.  Plaintiff has continued to suffer denial of access to these facilities and faces the prospect of unpleasant and discriminatory treatment should they attempt to return to these facilities.  Plaintiff is unable to return to the SureStay Plus Hotel until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination on a daily basis since February 2, 2024, all to his statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

55.     **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, who require the assistance of service animals from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against them on the sole basis that Plaintiff is a person with disabilities who requires the assistance of a service animal.

56.     Plaintiff wishes to return to patronize the SureStay Plus Hotel but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities.  Therefore, Plaintiff cannot return to patronize the SureStay Plus Hotel and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

57.     The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendant's inaccessible policies.   As to the Defendant that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for

16

1    disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and

2    costs.

3        58.    Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any

4    continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained

5    of and to require Defendant to comply forthwith with the applicable statutory requirements

6    relating to access for disabled persons.  Such injunctive relief is provided by California Civil

7    Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further request that the Court award

8    damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses,

9    and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5

10   and other law, all as hereinafter prayed for.

11       59.    **DAMAGES:**  As a result of the denial of full and equal access to the described

12   facilities and due to the acts and omissions of Defendant in owning, operating, leasing,

13   constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of

14   his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has

15   suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal

16   injuries, all to his damages per Civil Code section 54.3, including general and statutory damages,

17   as hereinafter stated.  Defendant's actions and omissions to act constitute discrimination against

18   Plaintiff on the basis that he was and is disabled and unable, because of the policy barriers created

19   and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on

20   a full and equal basis as other persons.  The violation has deterred Plaintiff from returning to

21   attempt to patronize the SureStay Plus Hotel and will continue to cause them damages each day

22   these barriers to access and policy barriers continue to be present.

23       60.    Although it is not necessary for Plaintiff to prove wrongful intent in order to show

24   a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v.*

25   *Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was

26   aware and/or was made aware of its duties to refrain from establishing discriminatory policies

27   against disabled persons, prior to the filing of this complaint.  Defendant's establishment of its

28   discriminatory policy to deny and restrict entry to persons with service dogs, and its

1   implementation of such a discriminatory policy against Plaintiff, indicate actual and implied

2   malice toward Plaintiff and conscious disregard for Plaintiff's rights and safety.

3        61.    **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct,

4   Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by

5   statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access

6   for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore

7   seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the

8   provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to

9   require that Defendant make its facilities accessible to all disabled members of the public,

10  justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions

11  of California Code of Civil Procedure section 1021.5 and other applicable law.

12       62.    Plaintiff suffered damages as above described as a result of Defendant's violations.

13  Damages are ongoing based on his deterrence from returning to the SureStay Plus Hotel.

14       WHEREFORE, Plaintiff prays for relief as hereinafter stated.

15  **PRAYER**

16       Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this

17  Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the

18  unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless

19  Plaintiff is granted the relief they request.  Plaintiff and Defendant have an actual controversy

20  and opposing legal positions as to Defendant's violations of the laws of the United States and the

21  State of California. The need for relief is critical because the rights at issue are paramount under

22  the laws of the United States and the State of California.

23       WHEREFORE, Plaintiff Paul Spector prays for judgment and the following specific

24  relief against Defendant:

25       1.    An order enjoining Defendant, its agents, officials, employees, and all persons

26  acting in concert with them:

27            a.   From continuing the unlawful acts, conditions, and practices described in this

28               Complaint;

18

   b. To modify its policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that his service dog will not be excluded and he will not be charged any additional "pet deposits" should he desire to enter and use the services of the SureStay Plus Hotel;

   c. That the Court issue preliminary and permanent injunction directing Defendant as current owner, operator, lessor, and/or lessee and/or its agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

   d. An order retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, general, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award of civil penalty as against Defendant under California Penal Code § 365.5(c);

4. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

5. An award of prejudgment interest pursuant to Civil Code § 3291;

6. Interest on monetary awards as permitted by law; and

7. Grant such other and further relief as this Court may deem just and proper.

Date: April 22, 2024                                    REIN & CLEFTON

                                                        ____/s/ Aaron M. Clefton
                                                        By AARON M. CLEFTON, Esq.
                                                        Attorneys for Plaintiff
                                                        PAUL SPECTOR

### JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: April 22, 2024                                    REIN & CLEFTON

                                                        ____/s/ Aaron M. Clefton
                                                        By AARON M. CLEFTON, Esq.
                                                        Attorneys for Plaintiff
                                                        PAUL SPECTOR

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES